CA No. 15-71346

District Court No. 2:14-cr-006-APG-GWF

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————

IN RE: HER MAJESTY THE QUEEN IN RIGHT OF CANADA,

Petitioner,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,

Respondent,

NATHAN "NATI" STOLIAR, *et al.*,

Defendants-
Real Parties in Interest.

———————

Response From The United States (Plaintiff—Real Party In Interest) In
Opposition To Petition For Writ of Mandamus

———————

JOHN C. CRUDEN
Assistant Attorney General

WAYNE D. HETTENBACH
Senior Trial Attorney
Environment &
Natural Resources Division
U.S. Department of Justice
Washington, DC


Date filed: May 6, 2015

DANIEL G. BOGDEN
United States Attorney

ELIZABETH OLSON WHITE
Appellate Chief and
Assistant U.S. Attorney
District of Nevada
100 W. Liberty, Suite 600
Reno, Nevada 89501
(775) 784-5438
Attorneys for United States—
Real Party in Interest

TABLE OF CONTENTS

Table of Authorities ..................................................................... iii

I.    Preliminary Statement .................................................... 1

II.   Statement of Jurisdiction ................................................ 2

III.  Statement of the Case .................................................... 2

      A.    The Charges and Guilty Pleas ................................... 2

      B.    Canada's Request for Restitution in the District Court. ........ 6

IV.   Argument ..................................................................... 10

      A.    Standard Applicable to This Petition ........................... 10

      B.    Whether a Foreign Government Can Be a "Person" Who
            May Be a "Crime Victim" under 18 U.S.C. § 3771(e) is an
            Open Question, But This Court Need Not Resolve It In
            This Case. ..................................................... 12

      C.    Although Evidence Establishes That Stoliar Defrauded
            Canada, That Fraud Was Not Part of the Scheme of Which
            Stoliar was Convicted. . ....................................... 14

            1.    *Canada was victimized by a separate scheme,
                  which was committed in Canada and was not
                  charged in the federal indictment.* ..................... 15

            2.    *Canada was not directly and proximately
                  harmed as a result of the charged offenses.* ........... 18

V.    Conclusion ................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Attorney General of Canada* v. *R.J. Reynolds Tobacco Holdings, Inc.*, 103 F.Supp.2d 134 (N.D.N.Y. 2000) ................................................... 13

*Bauman* v. *United States District Court*, 557 F.2d 650 (9th Cir. 1977) . 10

*In re Acker*, 596 F.3d 370 (6th Cir. 2010) ............................................... 10

*In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008) ..................................... 10

*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ................................................ 10

*In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555 (2d Cir. 2005) ............. 10

*In re Stewart*, 552 F.3d 1285 (11th Cir. 2008) .................... 10, 20, 21, 22

*Kenna* v. *United States District Court*, 435 F.3d 1011 (9th Cir. 2006) .. 10

*Morissette* v. *United States*, 342 U.S. 246 (1952) ................................... 10

*Pasquantino* v. *United States*, 544 U.S. 349 (2005) ............................... 13

*United States* v. *Brown*, 665 F.3d 1239 (11th Cir. 2011) ............... 15, 17

*United States* v. *Ekanem*, 383 F.3d 40 (2d Cir. 2004) .......................... 13

*United States* v. *Gamma Tech Indus.,* 265 F.3d 917 (9th Cir. 2001) ....... 9

*United States* v. *Green*, 722 F.3d 1146 (9th Cir. 2013) ........................... 13

*United States* v. *Kasper*, __F.Supp.3d __, 2014 WL 6480571 (D.N.M. Nov. 6, 2014) ...................................................................... 12

*United States* v. *Lawrence*, 189 F.3d 838 (9th Cir. 1999) ................... 15

*United States* v. *Lincoln*, 277 F.3d 1112 (9th Cir. 2002) ........................ 13

*United States* v. *Monzel*, 641 F.3d 528 (D.C. Cir. 2011) ........................ 10

*Vt. Agency of Natural Res.* v. *U.S. ex rel. Stevens*, 529 U.S. 765 (2000). 12

## FEDERAL STATUTES

18 U.S.C. § 2 ................................................................................. 1, 2

18 U.S.C. § 371 ............................................................................. 1, 2

18 U.S.C. § 1342 ........................................................................... 1, 2

18 U.S.C. § 1519 ............................................................................... 2

18 U.S.C. § 1956(h) ...................................................................... 1, 2

18 U.S.C. § 3663A(a)(1) ................................................................. 14

18 U.S.C. § 3663A(a)(2) ........................................................... 15, 18

18 U.S.C. § 3771 ........................................................................... 1, 2

18 U.S.C. § 3771(d)(3) ....................................................................... 2

18 U.S.C. § 3771(e) ........................................................................ 12

42 U.S.C. § 7413(c)(2)(A) ............................................................. 1, 2

## FEDERAL RULE

Fed. R. App. P. 21(a)(2)(C) ............................................................. 9

# I.  PRELIMINARY STATEMENT

This matter comes before this Court on a petition for a writ of mandamus filed pursuant to 18 U.S.C. § 3771, the Crime Victims' Rights Act ("CVRA"). The petition was filed by Her Majesty the Queen in Right of Canada ("Canada"), seeking review of the district court's determination that Canada was not a "victim" of the federal offenses of which Defendant Nathan Stoliar was convicted. Stoliar was convicted and sentenced on April 9, 2015, for conspiracy to commit criminal offenses and to defraud the United States in violation of 18 U.S.C. § 371;[1] conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h); two counts of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1342 and 2; and making false statements related to the Clean Air Act and aiding and abetting in violation of 42 U.S.C. § 7413(c)(2)(A) and 18 U.S.C. § 2.

Although it appears beyond question that Stoliar defrauded Canada, the district court correctly concluded that Canada was not a victim of the criminal schemes of which Stoliar was convicted in this

---

[1] The judgment contains a scrivener's error, incorrectly citing that statute as 18 U.S.C. § 871. *See* ER 463.

1

case. Canada's petition must, therefore, be denied.

## II. STATEMENT OF JURISDICTION

Canada seeks mandamus review of the district court's denial of its request for restitution. Canada submitted its petition pursuant to the CVRA, 18 U.S.C. § 3771. This Court has jurisdiction over this petition pursuant to 18 U.S.C. § 3771(d)(3).

## III. STATEMENT OF THE CASE

### A.    The Charges and Guilty Pleas

On January 8, 2014, the federal grand jury sitting in Nevada returned a 57-count indictment charging Nathan Stoliar and James Jariv with conspiracy to commit criminal offenses and to defraud the United States in violation of 18 U.S.C. § 371 (count 1); conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) (count 2); forty-nine counts of wire fraud in violation of 18 U.S.C. §§ 1342 and 2 (counts 3 through 51); four counts of making false statements related to the Clean Air Act in violation of 42 U.S.C. § 7413(c)(2)(A) and 18 U.S.C. § 2 (counts 52-55); and two counts of obstruction of justice in violation of 18 U.S.C. §§ 1519 and 2 (counts 56 and 57). ER 5-39.

On July 22, 2014, pursuant to a plea agreement with the

government, *see* ER 40-71, Stoliar pleaded guilty to counts 1, 2, 3, 15, and 52. *See* ER 72-119 (change-of-plea transcript). In his plea agreement, Stoliar admitted the following:

> Around September of 2009, [defendants J. Jariv and Stoliar] bought a facility in Vancouver, Canada, named City Farm Biofuel, ("CityFarm") which was a biodiesel producing facility. * * *
>
> In early 2010, Stoliar, J. Jariv, A. Jariv, and two other employee managers planned a fraud scheme where they would claim that CityFarm was producing biodiesel, when it truth and in fact it was not, and that they would create the documentation necessary to substantiate biodiesel production so that Stoliar and J. Jariv, through CityFarm, Canada Feedstock, Global E Marketing, and other companies they controlled, could collect government incentives and subsidies for biodiesel production. In late 2009 and mid-2010, the defendants registered CityFarm with EPA to allow them to participate in government incentive and credit programs related to biodiesel production. * * *
>
> As part of this scheme, Stoliar and J. Jariv agreed and devised that tanker truck drivers would be instructed to drive back and forth across the U.S.-Canada border without off-loading their contents, claiming to import biodiesel into the U.S., and export feedstock to Canada Feedstock and CityFarm. These back and forth trips would generate some of the paperwork (import/export records, invoices, bills of lading, etc.) necessary to substantiate biodiesel production and import, and conceal the defendant's fraudulent scheme.

* * *

From at least August 1, 2010, and continuing through at least October 2011, A. Jariv and others, as part of the scheme, made entries in an U.S. Environmental Protection Agency ("EPA") computer system that were false and fraudulent in order to generate biodiesel credits known as RINs. RINs are credits that U.S. biodiesel importers and producers can generate when they import or generate pure biodiesel, known as B-100. RINs are commodities that can be bought and sold with the biodiesel, or may be separated from the biodiesel and bought and sold on a secondary market, similar to any other commodity.

* * * Computer entries were submitted to EPA that claimed that GEM had imported, purchased, and blended large quantities of biodiesel produced by CityFarm, when in truth and in fact the biodiesel had not been produced by CityFarm, and no biodiesel was actually transferred to and blended by GEM as these entries claimed.

From at least August 1, 2010, and continuing through at least October 2011, the defendants through their actions and the actions of their employees and agents, falsely claimed to import and purchase more than 4.2 million gallons of biodiesel, and generated and caused others to generate more than 6.3 million fraudulent RINs. The fraudulently created RINs were then sold to third party companies, either with the biodiesel or separately, and were worth approximately $7 million. The proceeds of this scheme were used to further the scheme and the biodiesel export scheme detailed below, and the profits were divided between Stoliar and J. Jariv.

4

From at least September of 2009, and continuing through December 31, 2013, Stoliar and J. Jariv also purchased in the United States large quantities of a biodiesel-petroleum blend, known as B-99, which is 99% biodiesel and 1% or less of petroleum diesel. Stoliar knew that this B-99 was RIN-less and had already been used to generate RINs by another party, and had also been used to allow another party to claim a tax credit available to those who blend B-100 into B-99. Because RIN-less B-99 cannot be used lawfully to generate a RIN, and cannot be used to claim the tax credit, it sells at a substantially lower price than B-100.

The defendants operated and controlled a U.S. company named MJ Biofuel * * *. Stoliar and J. Jariv used this company and the domestically purchased RIN-less B-99 to perpetrate several fraudulent schemes. In the first scheme, Stoliar and J. Jariv would claim the domestically purchased B-99 was B-100 produced at CityFarm in Canada. * * * Simply by falsely changing the description of the product from B-99 to B-100, Stoliar and J. Jariv were able to sell the biodiesel for between $2 and $2.30 more per gallon than the B-99 they bought, because the purchaser was able to use B-100 to claim the $1.00/gallon blenders tax credit, and was able to use the B-100 to generate a RIN, or Stoliar and Jariv would generate the RIN and sell it with the B-100. * * *

In addition, for a third-party who purchased the re-labeled B-100 from the defendants, Stoliar and J. Jariv devised another scheme: the defendants used another company that they controlled, ZP Chemicals, to pose as an unrelated buyer of biodiesel. Stoliar and J. Jariv re-bought the B-99 from the third party, after that party had taken the

blenders credit and separated the RIN, therefore lowering the price. The defendants would then re-purchase the same RIN-less B-99 for a lower price through ZP Chemicals, they would re-sell the B-99 back to the same company through GEM or CityFarm, again claiming that it was B-100 manufactured at CityFarm, and eligible for the blenders credit and RIN generation, thereby allowing them to charge a higher price. This practice continued for several months during the term of the indictment.

Finally, from at least September 2009, through December 31, 2013, Stoliar and J. Jariv exported RIN-less B-99 to Canada and elsewhere, without acquiring and giving RINs to the United States as they were required by law. * * *

* * * As a result of the export of more than 23 million gallons of biodiesel during the time period June 2009 through January 1, 2014, Stoliar and Jariv were required to provide to the United States in excess of 34 million RINs. The value of the RINs that the defendants failed to provide to the EPA, and which they instead kept for themselves from their profits from their export and sales, was in excess of $34 million.

ER 45-50.

## B.    Canada's Request for Restitution in the District Court

Canada filed a "petition for order of restitution at sentencing of Defendant Stoliar" on April 4, 2015, ER 120-258, and filed errata to that petition on April 8, 2015. ER 259-458. In its petition, Canada asserted that the federal indictment had charged Stoliar with "a far-reaching

6

fraud scheme wherein he scammed Canada and certain American businesses by falsely claiming to be producing biodiesel." ER 120. Canada argued that it "was a victim directly and proximately harmed by Stoliar's criminal scheme," ER 125, because "Canada suffered pecuniary harm as a result of Stoliar's criminal activity." ER 126. Using the word "element" in its colloquial (rather than legal) sense, Canada contended that "the fraudulent operation of City Farm was an essential element of Stoliar's crimes," and that "the request for and the receiving of the subsidies paid for by Canada was a necessary element and component of the continuing fraud." ER 126, 127.

Canada's petition included an affidavit from Paula Vieira, Director of the Alternative Fuels Program Division of the Department of Natural Resources Canada ("NR Can"), which described an agreement NR Can had entered into with City Farm to make financial contributions to City Farm based on its production and sale of bio-fuel. *See* ER 261-265. The Vieira affidavit detailed 981,660 CAD that NR Can had paid to City Farm between October 2009 and January 2011 based on fraudulent claims for payment that misrepresented the amount of bio-fuel City Farm had produced and sold. *See* ER 261-265. Documentation regarding

7

those fraudulent claims was attached. *See* ER 335-396. Documentation for each payment included a claim for payment from City Farm, and e-mail correspondence between City Farm and NR Can confirming that the payment had been sent, received, and deposited.

Canada's petition also described an agreement between City Farm and Canada's ecoAgriculture Biofuel Capital Initiative, under which Canada paid Stoliar and City Farm 251,405.32 CAD to subsidize City Farm's capital costs in expanding its production capacity. ER 122.[2]

---

[2] Stoliar filed a written response in opposition to Canada's district court petition, arguing, *inter alia*, that Canada's request should be denied because "[s]ince the inception of this case, Canada has not been identified as a victim for the purposes of receiving restitution by the U.S. Government," and "[t]he PSR does not list Canada as a victim to receive restitution as well." *See* CR 193, at 2. Stoliar also argued that awarding restitution to Canada would constitute a "veto" over the government's plea negotiations with him. *Ibid*.

The government disagrees with both of those arguments. If, in fact, Canada *were* a victim of the schemes of which Stoliar was convicted, it would be irrelevant that Canada had not been identified as a victim in the charging document or elsewhere. Moreover, although the parties agreed in the plea agreement that Stoliar would pay $1 million in restitution, that plea agreement explicitly did not bind the court. *See* ER 41 (plea agreement confirming that it "does not bind * * * the Court"); ER 105-106 (court confirming at the change-of-plea hearing that Stoliar understands that "the Court always retains the right to enter a different restitution amount or a different forfeiture amount so, in theory, even though the 4 million and 1 million are paid, I could still say no, I need

The district court heard argument on Canada's petition at Stoliar's lengthy sentencing hearing on April 9, 2015, and took the matter under submission. *See* CR 201. On April 21, 2015, the district court denied Canada's petition in a written order. ER 1-4.[3]

The court noted that a "party seeking to be included as a victim bears the burden of demonstrating by a preponderance of the evidence that it is a victim," *see* ER 4 (citing *United States* v. *Gamma Tech Indus., Inc.,* 265 F.3d 917, 924 (9th Cir. 2001)), and concluded that Canada had failed to meet its burden of establishing "that it was directly harmed by Stoliar's unlawful conduct in the course of the schemes to which he pleaded guilty in this case." ER 4.

First, the court correctly found that "[n]one of the schemes charged in the indictment involved defrauding Canada out of financial contributions or payments under Canada's incentive programs." *Ibid*.

---

you to pay more, I'm going to require you to pay more."). In any event, a plea agreement cannot override the district court's obligation under the MVRA to order a defendant to pay restitution to the victims of his offenses.

[3] It its excerpts of record, Canada provided a copy of the district court's order, as required by Federal Rule of Appellate Procedure 21(a)(2)(C), but did not provide a transcript of the hearing on its petition.

Second, the court noted that Canada had produced no evidence to support its contentions 1) that Stoliar used the phony import/export documents generated in the schemes to which he pleaded guilty to induce Canada to make the incentive payments; 2) that Canada's subsidies brought legitimacy to Stoliar's scheme in the United States; or 3) that Canada's payments subsidized the scheme in the United States. *Ibid*. Without such evidence, the district court concluded that "Canada has not shown by a preponderance of the evidence that it was defrauded in the course of the schemes to which Stoliar pleaded guilty in this case" and found that it was "not a victim as defined under the MVRA." *Ibid*.

## IV. ARGUMENT

### A.  Standard of Review Applicable to This Petition

When reviewing a petition for a writ of mandamus, this Court is generally guided by the five factors described in *Bauman* v. *United States District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). Those factors are whether (1) the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of

law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *Id.* at 654-55.

In *Kenna* v. *United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006), this Court concluded that, for petitions filed under the CVRA, a balancing of all of the *Bauman* factors is not required. Rather, the Court must focus on whether the district court committed legal error or abused its discretion. *Id.* at 1017. Although the government continues to believe that the traditional standard of review for mandamus petitions applies equally to CVRA petitions,[4] it concedes that *Kenna* controls the

---

[4] *See United States* v. *Monzel*, 641 F.3d 528, 533 (D.C. Cir. 2011) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.") (quoting *Morissette* v. *United States*, 342 U.S. 246, 263 (1952)); *see also In re Acker*, 596 F.3d 370, 372 (6th Cir. 2010); *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008); *In re Antrobus*, 519 F.3d 1123, 1125 (10th Cir. 2008). (applying traditional standard of review to mandamus petitions brought under CVRA); *but see In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563-64 (2d Cir. 2005) (reviewing petition for "abuse of discretion"); *In re Stewart*, 552 F.3d 1285, 1288-89 (11th Cir. 2008) (granting petition without asking whether victim had a clear and indisputable right to

case before this Court.

**B. Whether a Foreign Government Can Be a "Person" Who May Be a "Crime Victim" under 18 U.S.C. § 3771(e) Is an Open Question, But This Court Need Not Resolve It In This Case.**

In its order directing the real parties interest to respond to Canada's petition, this Court directed the parties to "address whether petitioner, a foreign government, is a 'person' who may be a 'crime victim' under 18 U.S.C. § 3771(e)."

The government is unaware of any appellate decision addressing this specific question.[5]  Although the Supreme Court has recognized a "presumption that 'person' does not include the sovereign" in federal statutes, *see Vt. Agency of Natural Res.* v. *U.S. ex rel. Stevens*, 529 U.S. 765, 780, (2000), this presumption can be rebutted, and government entities (including foreign governments) have been considered "persons" under a variety of federal statutes, including the Mandatory Victim

---

relief).

[5]    Indeed, undersigned counsel has found only one district court decision addressing a related issue. *See United States* v. *Kasper*, __F.Supp.3d __, 2014 WL 6480571 (D.N.M. Nov. 6, 2014) (holding that a tribal government that was not a "crime victim" under the CVRA).

Restitution Act ("MVRA"). *See*, *e.g.*, *United States* v. *Lincoln*, 277 F.3d 1112, 1114 (9th Cir. 2002) (holding that "[t]he MVRA's definition of 'victim' includes the United States government."); *Attorney General of Canada* v. *R.J. Reynolds Tobacco Holdings, Inc.*, 103 F.Supp.2d 134, 150 (N.D.N.Y. 2000), *affirmed*, 268 F.3d 103 (2d Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002) (holding that Canada was a "person" that could bring a civil RICO suit for damages).[6]

The Second Circuit addressed the default definition of "person" in the Dictionary Act, and concluded that it does not apply to the MVRA. *See United States* v. *Ekanem*, 383 F.3d 40, 42-43 (2d Cir. 2004) (holding that the U.S. Government was a "victim" for purposes of the MVRA, and that the meaning of "victim" in that context "is not controlled by the default definition of 'person' in the Dictionary Act"). The government has not found any appellate decision applying that analysis to the CVRA.

Thus it remains an open question in this Court whether a foreign

---

6    In addition, as Canada notes in its petition (*see* Petition at 8), this Court has affirmed orders of restitution to a foreign government as a "victim," *see United States* v. *Green*, 722 F.3d 1146, 1147-48 (9th Cir. 2013), and the government has argued that Canada was entitled to restitution under the MVRA. *Pasquantino* v. *United States*, 544 U.S. 349, 382 (2005) (Ginsberg, *J.*, dissenting) (citing Tr. of Oral Arg., at 36).

government can be a "person directly and proximately harmed as a result of the commission of a Federal offense." This Court need not resolve that question here. As explained below, regardless whether Canada *could* be a "person * * * harmed" by the commission of a federal offenses, in this case, it was not.[7]

## C.    Although Evidence Establishes That Stoliar Defrauded Canada, That Fraud Was Not Part of the Scheme of Which Stoliar Was Convicted.

Under the MVRA, when a defendant is convicted of an offense covered by the statute, the district court is required to order that the defendant "make restitution to the victim of *the offense*." 18 U.S.C. § 3663A(a)(1) (emphasis added). The statute further explains that

> the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves *as an element* a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct *in the course of the* scheme, conspiracy, or pattern.

---

[7] This issue was not raised in the district court. In light of the extraordinarily tight deadlines imposed by the CVRA on the parties and on the Court with respect to this mandamus petition, undersigned counsel respectfully suggests that this question—a question of first impression in this Court—would be best resolved in a context that permits the parties to fully research and brief the issue and allows ample time for the Court's consideration.

14

18 U.S.C. § 3663A(a)(2) (emphases added). Thus, "when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, * * * the restitution order [may] include acts of related conduct for which the defendant was not convicted." *United States* v. *Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999). Conversely, however, "a criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *United States* v. *Brown*, 665 F.3d 1239, 1252-53 (11th Cir. 2011).

1. *Canada was victimized by a separate scheme, which was committed in Canada and was not charged in the federal indictment.*

As the district court correctly observed, the conspiracy and wire fraud offenses of which Stoliar were convicted were based on "fraudulent schemes involving the false generation of renewable fuel credits under United States law, false representations regarding the type of fuel being sold, and the export of biodiesel without retiring or purchasing renewable energy credits adequate to cover the exported amount as required under United States law." ER 1. The Vieira affidavit and

accompanying exhibits presented by Canada appear to demonstrate that, at the same time Stoliar was engaged in the schemes alleged in the indictment (*i.e.*, his schemes to defraud the United States by falsely generating RINs, to defraud the third-party victims to whom he sold the Fraudulent RINs, and to illegally undersell competitors by falsely selling B-99 as B-100), he was also engaged—in violation of Canadian law—in a scheme to defraud Canada of funds made available through two Canadian programs to subsidize and encourage the production of bio-fuels. *See* ER 259-458.

Stoliar's fraud against Canada apparently included false representations on applications made in Canada to Canadian government officials. As a separate sovereign, Canada has authority to prosecute Stoliar, under its own laws, for frauds committed within Canada (whether or not the Canadian government was victim) and for frauds committed against Canada (wherever committed). The United States, in contrast, plainly lacks jurisdiction to charge violations of Canadian law, including laws specific to Canada's biodiesel programs.

Moreover, although the United States conceivably might have jurisdiction to charge fraud against Canada under the general wire

16

fraud statute—*e.g.*, if false applications to Canadian officials originated in electronic transmissions within the United States—Canada does not contend that the false applications for Canadian government subsidies originated in the United States and, in any event   the indictment in this case did not charge the fraudulent scheme against Canada.

Stoliar's scheme to defraud Canada simply was not part of the schemes for which he was charged and convicted in the instant federal case. Stoliar thus "cannot be compelled to pay restitution" for that conduct, because that conduct was "committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *Brown*, 665 F.3d at 1252-53.

Canada's claim (*see* Petition at 18) that the district court "committed legal error [and] abused its discretion" by "discount[ing] the dismissed charges" fails. To the contrary, the district court correctly identified the offenses of conviction, noted which of those offenses "involve[d] as an element a scheme, conspiracy, or pattern of criminal activity," and then correctly considered Stoliar's "criminal conduct in the course of th[ose] scheme[s], conspiracy[ies], or pattern[s]" to determine that Canada had not been "directly harmed" by that criminal conduct.

17

ER 1-2; *see* 18 U.S.C. § 3663A(a)(2). The court did not err.

> 2. *Canada was not directly and proximately harmed as a result of the charged offenses.*

Canada argued in its district court petition that it was victim of the offenses charged in the federal indictment—even though the federal indictment did not reference Stoliar's scheme to defraud Canada of Canadian government subsidies and biodiesel incentives—because 1) Stoliar used the phony import/export documents generated in the schemes to which he pleaded guilty to induce Canada to make the incentive payments; 2) Canada's subsidies brought legitimacy to Stoliar's scheme in the United States; and 3) Canada's payments subsidized the scheme in the United States. *See* ER 126-127.

As a threshold matter, as the district noted, Canada produced no evidence to support these contentions. ER 4. In its mandamus petition to this Court, Canada renews the first two of these contentions. *See* Petition at 11 ("Many of these records [phony import/export documents] were used by City Farm to claim ecological credits and incentives from the Canadian government."); 19-20 ("Canada also contends that the very documents used to defraud Canada were those used to lend credence and

legitimacy to Stoliar's scheme in the United States.").[8] But once again, Canada offers no evidence to support the contentions. To the contrary, with respect to the first contention, the attachments to the Vieira affidavit appear to show that Canada paid City Farm ecological credits and incentives based solely on City Farm's submission of monthly claims for payment; City Farm did not provide, and Canada did not request to see, any of City Farm's import/export documents. *See* ER 335-396. With respect to the second contention, Canada did not, and does not, support the contention with any evidence, argument, or explanation.

In any event, none of the proffers by Canada makes its case. In particular, even if Stoliar used some of the same fraudulent documents in his separate schemes to defraud Canada and the EPA, and even if Canadian subsidies helped facilitate the offenses charged in the federal indictment, it does not follow that Canada was directly and proximately harmed by the offenses in the federal indictment. The crimes charged in

---

[8] Canada makes reference to the district court's rejection of its third contention, and asserts that the district court "ignore[d] the forfeited funds from the Bank of Montreal and the transfers from that bank to the United States that are part of the evidence for forfeiture orders," Petition at 20, but offers no explanation or argument as to how those funds or transfers support its contention.

the indictment involved a different set of transactions aimed at acquiring money or items of value from persons and entities other than Canada. And the fraud against Canada was not a necessary part of charged federal offenses; *i.e.*, it was not necessary for federal prosecutors to allege and prove fraud against Canada to support the guilty plea. Because the fraud against Canada involved a set of transactions and false representations to the government of Canada that were not alleged or proven in the present case, the district court did not err (much less clearly err) in determining that Canada was not directly or proximately harmed as a result of the offenses of conviction.

Canada's reliance on *In re Stewart*, 552 F.3d 1285 (11th Cir. 2008) is misplaced. In *In re Stewart*, the defendants—an executive vice president of a bank's mortgage lending department, and the president of a mortgage origination firm—conspired to charge borrowers a two-percent, rather than a one-percent, mortgage brokerage fee, and to split the extra one percent between the two of them. *Id.* at 1287. The defendant was charged with conspiring to deprive the bank of honest services, and conspiring to commit money laundering. *Ibid.* When the district court rejected the borrowers' request to be heard on the ground

that only the bank was named as a "victim" in the charging document, the borrowers filed a mandamus petition, which the court of appeals granted. *See id*. at 1287-1288.

Canada erroneously argues that it is "in the same position as *Stewart*'s home purchasers" because, it says, "The home purchasers in *Stewart* were not victims of the charged crime—wire fraud against the bank—but were victims of the defendant's overall criminal activity and thus entitled to restitution," and, similarly, "Canada did not fall victim to the fraudulent RIN sales or the failure to acquire RINs, but was deceived into subsidizing Stoliar's overall RIN scam." *See* Petition at 25.

On the contrary, the Eleventh Circuit in *In re Stewart* expressly held that the home purchasers *were* victims of defendant's wire fraud against the bank:

> On the face of it, petitioners were victims. The agreement between petitioners and the Bank in this case provided that "[t]he borrower shall pay, or provide payment for all costs of the closing of the loan and all expenses incurred by the Bank with respect thereto." These closing costs included the mortgage brokerage fee. As a consequence of the increase in the mortgage brokerage fee, therefore, petitioners became liable under their contract with the Bank for an extra one percent of their total loan, suffering direct and proximate harm.

21

*In re Stewart*, 552 F.3d at 1288. While the Eleventh Circuit made clear that a victim need not be identified as such in the charging instrument to be entitled to restitution, *see id.* at 1289, it reiterated that the key question remained whether the purported victim "suffer[ed] harm as a result of the crime's commission." *Ibid.*; *see also id.* at 1288 ("To determine a crime victim, then, first, we identify the behavior constituting 'commission of a Federal offense.' Second, we identify the direct and proximate effects of that behavior on parties other than the United States.").

Here, behavior constituting commission of a Stoliar's federal offenses involved the false generation of RINs, false representations the EPA and to buyers regarding to the type of fuel being sold, and exporting biodiesel without retiring or purchasing RINs adequate to cover the exported amount as required under United States law. Canada simply did not suffer harm as a result of *that* criminal behavior. The district court correctly concluded that Canada was not a victim of the schemes for which Stoliar was charged and convicted.

22

## V.   CONCLUSION

For the reasons set forth above, this Court should deny Canada's

petition for a writ of mandamus.

DATED this 6th day of May, 2015.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney


s/ Elizabeth O. White
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney
District of Nevada
100 W. Liberty, Suite 600
Reno, Nevada 89501
(775) 784-5438
Attorneys for United States—
Real Party in Interest

**CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. P. 21(d) AND 32(a)**

I certify that:

Pursuant to Fed. R. App. P. 21(d) and 32(a), the attached response is proportionately spaced, has a typeface of 14 points or more, is fewer than 30 pages in length, and and contains 5,042 words.

_s/ Elizabeth O. White_
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney

Dated: May 6, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2015, I electronically filed the foregoing Response from the United States (Plaintiff—Real Party in Interest) in Opposition to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Elizabeth O. White*
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney