CA No. 15-71346

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
\*\*\*

| | |
|---|---|
| In re: Her Majesty the Queen in Right of Canada,<br><br>        Petitioner.<br>v.<br><br>U.S. DISTRICT COURT FOR THE DISTRICT OF NEVADA,<br><br>        Respondent,<br><br>        -and-<br><br>NATHAN "NATI" STOLIAR, *et al.,*<br><br>        Defendants-Real Parties<br>        in Interest. | D.C. No. 2:14-cr-00006-APG-GWF |

**PETITION FOR REHEARING EN BANC**

**TODD M. LEVENTHAL, ESQ.**
**LEVENTHAL & ASSOCIATES**
**California Bar No. 223577**
**Nevada Bar No. 8543**
**626 S. Third Street**
**Las Vegas, Nevada 89101**
**levelnthalandassociates@gmail.com**
**( 702) 472-8686**
**Counsel for**
**HER MAJESTY THE QUEEN IN RIGHT OF CANADA**

## TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    Legal Background.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    Statement of Alleged Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3.    Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

REASONS FOR GRANTING THE WRIT. . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.    The District Court Failed to Appreciate the Significance of the Conspiracy Charged and Pled to in Count One. . . . . . . . . . . . . . . . . 21

    2.    Canada was a Victim Directly and Proximately Harmed by Stoliar's Scheme. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    3.    The Victim Status of Canada is Supported by the Plea Agreement.. 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

STATEMENT OF RELATED CASES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**Cases.**

*In re Antrobus*, 419 F.3d 1123, 1126-27 (10th Cir. 2008) (Tymkovich, J., concurring).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*In re Dean*, 527 F.3d 391,393-94 (5th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . 16

*In re Stewart,*, 552. F.3d 1285, 1289 (11th Cir. 2008). . . . . . . . . . . 4-5, 9, 22-23, 25

*In re Wellcare Health Plans, Inc.,* 754 F.3d 1234, 1239, 2014 U.S. App. LEXIS 11086, 14, 24 Fla. L. Weekly Fed. C 1422, 2014 WL 2685541 (11th Cir. Fla. 2014). 6

*Kenna v. U.S. District Court*, 435 F.3d 1011, 1013 (9th Cir. 2006). . . . . . . 4, 6, 15

*Pasquantino v. United States,* 544 U.S. 349, 352, 125 S. Ct. 1766, 1770, 161 L. Ed. 2d 619 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 27

*Stake Ctr. Locating, Inc. v. United States Dist. Court for the Dist. of Nev.* (*In re Stake Ctr. Locating, Inc.*), 731 F.3d 949, 951 (9th Cir. Nev. 2013) . . . . . . . . . 6, 15

*United States v. Acosta*, 303 F.3d 78 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . 18

*United States v. Aguirre-Gonzalez,* 597 F.3d 46, 50, 2010 U.S. App. LEXIS 4388, 8 (1st Cir. P.R. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*United States v. Berger,* 574 F.3d 1202, 1204 (9th Cir. 2009).. . . . . . . . . . . . . 16

*United States v. De La Fuente*, 353 F.3d 766 (9th Cir. Cal. 2003). . . . . . . . . 25-26

*United States v. Gamma Tech. Indust.*, 265 F.3d, 917, 924 (9th Cir. 2001). . . . . 6

*United States v. Gossi*, 608 F.3d 574, 579 (9th Cir. 2010).. . . . . . . . . . . . . . . . 6

*United States v. Green*, 722 F.3d 1146, 1147-48 (9th Cir. 2013).. . . . . . . . . . . 8

*United States v. Harper,* 33 F.3d 1143, 1148 (9th Cir. 1994) . . . . . . . . . . . . . . . 22

*United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996)(emphasis added).. . . . 8

*United States v. Inafuku*, 938 F.2d 972, 973 (9th Cir. 1991). . . . . . . . . . . . . . . . 21

*United States v. Jull*, 24 Fed. Appx. 686, 688 (9th Cir. 2001). . . . . . . . . . . . . . . . 5

*United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir. 1999). . . . . . . . . . . . . 6, 18

*United States v. Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014). . . . . . . . . . . . . . . . . . 5

*United States v. Peterson,* 538 F.3d 1064, 1075 (9th Cir. 2008). . . . . . . . . . . . . . 5

**United States Code**.
18 U.S.C. § 876(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
18 U.S.C. § 3663. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17
18 U.S.C. § 3663(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18, 19
18 U.S.C. § 3663A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17
18 U.S.C. § 3663A(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
18 U.S.C. § 3663A(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
18 U.S.C. § 3663A(c)(1)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
18 U.S.C. § 3664. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
18 U.S.C. § 3771. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
18 U.S.C. § 3771(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
18 U.S.C. § 3771(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22
18 U.S.C. § 3771(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
18 U.S.C. § 3771(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 16
18 U.S.C. § 3771(d)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
18 U.S.C. § 3771(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Congressional Acts**
Crime Control Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789. . . . . . . . . . . . 18
Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110
Stat. 1214 (Apr. 24, 1996)(codified at 18 U.S.C. § 3663(a)(2)). . . . . . . . . . . . . . 19

**Congressional Record.**

150 Cong. Rec. S4269 (daily ed. Apr. 22, 2004)(statement of Sen. Feinstein). . . . 4
150 Cong. Rec. S10912 (daily ed. Oct. 9, 2004). . . . . . . . . . . . . . . . . . . . . . . . . 4
150 Cong. Rec. S10912 (daily ed. Oct. 9, 2005) (statement of Sen. Kyl). . . . . 4, 22

## INTRODUCTION AND RELIEF SOUGHT

Her Majesty the Queen in Right of Canada (Canada) petitions this honorable Court for an *en banc* review of the following issue.

**Issues.**

1. How is a conspiracy, 18 U.S.C. § 371, determined to have begun and concluded? In other words, can some illegal acts in a conspiracy be discounted while others are part and parcel of the conspiracy?

**Relief Sought.**

Her Majesty the Queen in Right of Canada, requests this *en banc* Court determine that Canada was, in fact, a victim of the wide-ranging conspiracy of Nathan Stoliar (Stoliar) and his co-defendant James Jariv (Jariv), pursuant to the conspiracy conducted by Stolair and Jariv, and is entitled to an order remanding this case to the District Court of Nevada for a ruling ordering restitution.

**Facts.**

Canada specifically requests close attention to the scope of the conspiracy and the facts underlying it as the Opinion filed May 12, 2015, spoke only to the fraudulent RIN[1] activity. Although Stoliar's conviction resulted only from

---

[1] RINs are credits that the United States importers and producers can generate when they import or manufacture pure biodiesel. RINs are commodities can be bought and sold with the biodiesel, or separated from the biodiesel and

1

fraudulent activity under United States law, the facts admitted by Stoliar encompass the fraud to Canada.

The following facts are taken from the plea agreement into which Stoliar entered with the government. Although Stoliar pled to greatly reduced charges, the charges to determine victims remain the allegations in the indictment containing 57 counts and the activity related to those allegations. EOR 5; *United States v. Booth*, 309 F.3d 566, 575-76 (9th Cir. 2002), *see also, United States v. Grice,* 319 F.3d 1174, 1177 (9th Cir. 2003); *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir. 1999).

**Facts Supporting the Conspiracy.** In September 2009, Stoliar and Jariv purchased City Farm Biofuel (City Farm) in Canada, which produced biodiesel and had contracts with Canada for incentive payments and repayable subsidies for the production of biodiesel and expansion of production. Those payments were transferred with the purchase of City Farm. For a few months City Farm produced small amounts of biodiesel until it exhausted its stock of feedstock. Canada paid the requisite incentives and subsidies. Stoliar and Jariv then formed a Canadian company, Canada Feedstock Supply (Canada Feedstock) for Jariv to operate to provide feedstock to City Farm.

---

bought and sold on a secondary market.

In early 2010, Stoliar and Jariv planned a scheme to defraud where they would claim City Farm was producing biodiesel, which it was not, and would create the documentation to support claims of City Farm, Canada Feedstock, Global E Marketing (GEM), a U.S. company, and other companies they controlled to collect government subsidies for biodiesel production. These documents further supported City Farm's claims to Canada for incentives and subsidies. Stoliar and Jariv also registered City Farm with the EPA to participate in U.S. government incentive and credit programs related to biodiesel production. As part of the scheme GEM would "import" biodiesel from City Farm to participate in U.S. incentive and credit programs related to biodiesel production.

Stoliar and Jariv initially had tanker truck drivers repeatedly cross the border with Canada without off-loading their loads in order to generate some of the paperwork needed to support the biodiesel production and import. Shortly after, a company owned by Jariv purchased trucks and began performing this part of the scheme. They claimed to both Canada and the U.S. to be producing large amounts of biodiesel. They claimed City Farm exported (phony) City Farm biodiesel to GEM, which would claim to receive the imported biodiesel and generate purchase records from City Farm. GEM claimed to blend biodiesel with petroleum diesel and sell it to third parties. Some of the third parties were companies owned or

controlled by Stoliar and Jariv.

Stoliar and Jariv, between August 2010 and October 2011, expanded the scheme to include generation of RINs. Computer entries were submitted to the EPA showing GEM imported, purchased, and blended large quantities of biodiesel produced by City Farm; City Farm concomitantly would claim to Canada the production of this biodiesel for the subsidies and incentives. No biodiesel actually was produced by City Farm; no biodiesel was transferred to and blended by GEM.`

From September 2009 through December 31, 2013, Stoliar and Jariv also participated in a scheme involving the sale, export and import of biodiesel between third parties and City Farm and GEM and other companies owned by Stoliar and Jariv in order to generate RINs and associated tax credits. They exported RIN-less B99 (99% biodiesel) to City Farm in Canada and failed to give the RINs to the United States as required by law. They then imported from City Farm B99 as B100 (100% biodiesel), generated RINs and re-sold to third parties the re-labeled B99 as B100.

To facilitate, carry out and collect the proceeds of the schemes above, money was deposited into and transferred among bank accounts in Las Vegas, Nevada, Canada and Australia by Stoliar and Jariv. The distribution of proceeds and transfer of funds to Soliar would be described in the various companies as other types of

4

business transactions involving biodiesel, when they were not.

Before Stoliar's sentencing, Canada petitioned for restitution of 1,233,065.32 CAD. EOR 120. Canada provided records of its payments to City Farm in Stoliar and Jariv's complex scheme, and the affidavit of Paula Vieira, Director of Alternative Fuels Program of the Department of Natural Resources of Canada, in support of its damages from Stoliar's scheme. EOR 261.

**Discussion.**

1. How is a conspiracy determined to have begun and concluded? In other words, can some illegal acts in a series fraudulent acts comprising a broad conspiracy be discounted while others are deemed part and parcel of the conspiracy?

The statute under which victim restitution is sought does not differentiate between charged and uncharged offenses, requiring only that the victim be injured by the fraud scheme. Under MVRA, a victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . . including in the case of an offense that involves as an element *a scheme, conspiracy, or pattern of criminal activity*, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2) (MVRA, Mandatory Victim Restitution Act).

5

Examples are numerous: defendant convicted of conspiring to dump petroleum impacted wastewater grounds for restitution to Coast Guard for clean-up, *United States v. Zhou*, 717 F.3d 1139, 1156 (10th Cir. 2013); restitution may be ordered for *losses to persons harmed in the course of the defendant's scheme even beyond the counts of conviction*. *United States v. Brock-Davis,* 504 F.3d 991, 993 (9th Cir. Mont. 2007) (emphasis added); the statutory construction is "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the *defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.* 18 U.S.C. § 3663A(a)(2)," *Brock-Davis, supra,* at 993 (emphasis added); Restitution may be ordered to a *victim not named in the indictment*. Restitution is proper when a scheme is involved without regard to whether the particular criminal conduct of the defendant which directly harmed the victim was alleged in a count to which the defendant pled guilty, or was even charged in the indictment. *Id.*

Simply stated, Stoliar and Jariv's conspiracy related to the production of biofuels. The United States cannot charge Stoliar and Jariv with the fraud perpetrated on Canada, but it can, under the scheme described in the Plea Agreement and Indictment, order restitution for the part of the biofuels fraud carried out in and against Canada, which included defrauding Canada in a biofuels

credit and incentive scam. The essential elements of having City Farm and Canada Feedstock companies use documents involved in the tanker truck round-robin as stated in the Indictment, were the basis for the fraud executed against Canada for its biofuels incentives and subsidies. These same documents were part and parcel of the frauds carried out ni the United States involving the RINs. This was one large and complex fraud that kept growing tentacles.

"Circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction." *United States v. Moreland,* 622 F.3d 1147, 1169 (9th Cir. 2010). "Defendant was properly held responsible for the *losses caused by the entire conspiracy's* check cashing activities given that defendant was responsible for creating counterfeit money orders for his co-conspirators, who would then cash them and give defendant a share of the profits." *United States v. Riley,* 335 F.3d 919, 923 (9th Cir. Wash. 2003). A "restitution order was issued pursuant to 18 U.S.C. § 3663A. Under § 3663A, in a case involving a conspiracy or scheme, restitution may be ordered for all persons harmed by the entire scheme." *United States v. Booth,* 309 F.3d 566, 576 (9th Cir. 2002), cited by *United States v. Riley,* 335 F.3d 919, 931 (9th Cir. Wash. 2003).

> Restitution is not confined to the harm caused by the particular offenses to which Riley pleaded guilty. *Id*. A conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a

coconspirator in furtherance of the conspiracy. *United States v. Fonseca-Caro,* 114 F.3d 906, 907 (9th Cir. 1997).

*United States v. Riley,* 335 F.3d 919, 931-932 (9th Cir. Wash. 2003).

> Riley also argues that it was improper for the court to include 14 checks passed by the conspiracy before he claims to have joined it in calculating the average actual loss caused by the conspiracy for purposes of calculating the intended loss. This inclusion was proper because, *even if the checks were passed before Riley joined the conspiracy, they were still illustrative of the level of fraud conducted by the conspiracy and were a sufficiently reliable predictor of its future intended activities.*

*Id.* at 929 n. 5 (emphasis added).

> Subsequent amendments to the VWPA created an exception to *Hughey* when the crime of conviction includes as an element *a scheme, conspiracy or pattern of criminal activity* (which the parties agree is not the case here), but otherwise *Hughey's* limitation remains in effect. *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir. 1999).

*United States v. Batson,* 608 F.3d 630, 637 (9th Cir. Cal. 2010) (emphasis added).

"[T]the Supreme Court suggested, in dictum, that, because 'the wire fraud statute punishes frauds executed in interstate or foreign commerce' it 'is surely not a statute in which Congress had only domestic concerns in mind.'" *European Cmty. v. RJR Nabisco, Inc.,* 764 F.3d 129, 141 (2d Cir. 2014) (citing *Pasquantino v. United States,* 544 U.S. 349, 371-72, 125 S. Ct. 1766, 161 L. Ed. 2d 619 (2005)).

In *Pasquanino, supra,* the Supreme Court concluded that 18 U.S.C. 1343 prohibits "any scheme or artifice to defraud," fraud *simpliciter*,

8

without any requirement that it be "in connection with" any particular transaction or event.The Pasquantino Court said that the petitioners' "offense was complete the moment they executed the scheme inside the United States," and that it was "[t]his domestic element of petitioners' conduct [that] the Government is punishing."

*Morrison v. Nat'l Austl. Bank Ltd.,* 130 S. Ct. 2869, 2887 (U.S. 2010) (citing *Pasquantino, supra*, at 371. Stoliar pled guilty to wire fraud and conspiracy to commit wire fraud. By punishing the conduct occurring in the United States (conspiracy to commit wire fraud), the government does not preclude restitution for the earlier acts in the conspiracy performed in and against another country.

The overarching conspiracy charged in this case cannot but include the fraud against Canada waged by Stoliar through City Farm and Canada Feedstock. Without the inception of the fraud that included Canada, the other frauds would not have been possible. Further, 18 U.S.C. §1343 prohibits "any scheme or artifice to defraud," or fraud *simpliciter*, without any requirement that it be "in connection with" any particular transaction or event. *Morrison,* 130 S. Ct. at 2887. The Circuit adopted the finding of the district court, ignoring the institution of the criminal scheme to defraud in Canada and against Canada by focusing only on the RIN scheme in the United States. The RIN scheme and the scheme to obtain incentives and subsidies from Canada are analogous. Each provides fraudulent papers to prove to each government that City Farm (Stoliar) is entitled to incentives and

9

subsidies–such as the incentives collected from Canada and the tax credits collected from the United States based on the same premise–production of biodiesel. The tanker trucks crossed back and forth across the U.S.-Canada border purportedly freighting biodiesel to the United States (to get a RIN credit (incentive) from the United States) and by purportedly producing a biofuel (to obtain an incentive and subsidies from Canada). Both of these frauds most often involved City Farm in one capacity or another. The frauds occurred concurrently and often would need to use the same paperwork to support the existence of biofuel that did not exist. A later version of this would still include defrauding both Canada and the United States for their incentives, but would also include a new twist involving the import and export of B100 (pure biodiesel) and B99 (biodiesel mixed with petroleum diesel).

    The crimes against the United States and Canada properly can be classified as property, as they involve the money of each country. Therefore, restitution is properly ordered under 18 U.S.C. § 3663A. *United States v. Luis*, 765 F.3d 1061 (9th Cir. 2014).

    Lastly, "Congress has expressly provided that the defendant shall "reimburse the victim for income lost by such victim as a result of such offense." 18 U.S.C. § 3663A(b)(2)(C)." *United States v. Andrews,* 600 F.3d 1167, 1178 (9th Cir. Wash.

2010). And what is Canada here, but a victim of Stoliar's conspiracy?

**Conclusion.**

For the reasons stated above, Her Majesty the Queen in Right of Canada requests this Court remand this case for a finding of restitution in favor of Canada under the theories and tenets of conspiracy as expressed and supported here.

Dated this 26th day of May, 2015.

        Respectfully submitted,

        */s/ Todd M. Leventhal*
        TODD M. LEVENTHAL, ESQ.
        LEVENTHAL AND ASSOCIATES
        626 S. Third Street
        Las Vegas, Nevada 89101
        levelnthalandassociates@gmail.com
        (702) 472-8686

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify pursuant to Fed. R. App. P. 32(a)(7)(c) that the attached petition is not subject to type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this petition complies with Fed. R. App. P. 21(d) and Fed. R. App. P. 32(a)(1)-(7) and is a principal petition of no more than 15 pages.

                                                  Respectfully submitted,

                                                  */s/ Todd M, Leventhal*
                                                  TODD M. LEVENTHAL, ESQ.
                                                  LEVENTHAL & ASSOCIATES
                                                  626 S. Third Street
                                                  Las Vegas, Nevada 89101
                                                  (702) 472-8686
                                                  Attorney for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that (s)he is an employee in the office of Leventhal and Associates and is a person of such age and discretion as to be competent to serve papers.

In accordance with the Federal Rules of Appellate Procedure, I certify that on this date, May 26, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit and served the parties through email by using the emails below. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    /s/ Maribel Godinez

    Employee of Todd Leventhal & Associates